1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRA ANN DAY,

                           Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                           Defendant.

Case No. 3:11-cv-05312-KLS

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below, defendant's decision to deny benefits should be reversed and this matter should

be remanded for further administrative proceedings.

                        FACTUAL AND PROCEDURAL HISTORY

        On November 25, 2008, plaintiff filed an application for disability insurance and another

one for SSI benefits, alleging disability as of that same date, due to a bipolar disorder, anxiety,

panic attacks, an obsessive compulsive disorder, and a post traumatic stress disorder. See

Administrative Record ("AR") 10, 147, 151, 179.  Both applications were denied upon initial

administrative review and on reconsideration. See AR 10, 69, 90.  A hearing was held before an

ORDER - 1

administrative law judge ("ALJ") on January 11, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 27-62.

On February 16, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 10-21.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 31, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On April 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3.  The administrative record was filed with the Court on July 19, 2011. See ECF #12.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; (5) in finding her to be capable of performing her past relevant work; and (6) in not finding her disabled at step five of the sequential disability evaluation process.[1]  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.  Although plaintiff requests oral argument in this case, the Court finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

ORDER - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

ORDER - 3

"logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

The ALJ in this case provided the following evaluation of the medical opinion evidence

ORDER - 4

in the record:

> Findings of the reviewing state-agency consultant, Anita Peterson, Ph.D., also support the [assessment of plaintiff's residual functional capacity ("]RFC["]) found in this decision. Dr. Peterson did an assessment as to the claimant's affective disorders, anxiety-related disorders, and substance addiction disorders with a Psychiatric Review Technique and Mental RFC Assessment, both on March 26, 2009 (Exhibits 11F, 12F). Dr. Peterson did not find any marked restriction in the claimant's broad functional areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Exhibit 12F at 1-2). Dr. Peterson's evaluation lent further support to the RFC finding above. Opinions of Anita Peterson, Ph.D., as well as other state-agency consultants, were accorded significant weight, given their thorough review of the records, medical expertise, familiarity with the Social Security Regulations, and consistency with the medical evidence of [the] record as a whole.

The opinions of the consultative psychologist, Christmas Covell, Ph.D., were discounted because his evaluation and medical source statement on February 24, 2009, appeared to have [been] based heavily on the claimant's subjective complaints, and were inconsistent with testing results (Exhibit 10F at 9). Dr. Covell opined that the claimant had "marked limitations" and "severe impairments" in interacting with others and tolerating stress; however, his own psychological tests revealed the claimant had "grossly average" basic social judgment, "average" memory functioning, "average" fund of knowledge, "intact" language skills, and "intact" visual-spatial abilities (Exhibit 10F at 7). Dr. Covell also recorded his observation that the claimant was "cooperative," her thought content "rational and goal directed," and insight "fair" – which are inconsistent with his opinion discussed above (Exhibit 10F at 9). On the same day that Dr. Covell assessed the claimant to have a GAF score of 35-44, he also expressed that he did not expect the claimant's psychiatric conditions to be permanently impairing, when he opined that the claimant "would benefit from gradual increases of work activities, possibly through sheltered work programs" after 12-18 months of treatment (Exhibit 10F at 8-9). Accordingly, Dr. Covell's opinions were given little weight.

With respect to employment, Dr. [Timothy] Panzer[, M.D.,] made the recommendation early on March 31, 2005, that the claimant was "able to participate in pre-employment activities." (Exhibit 19F at 4). On March 3, 2006, Dr. Panzer again recommended that the claimant "began [sic] pre-employment or education activities to work toward future employment" – indicating that the treating physician considered the claimant capable of working or doing activities equivalent to work (Exhibit 13F at 51).

Dr. Panzer's opinions were accorded more weight than Dr. Covell's, because

1
2
3
4
5
6

Dr. Panzer had been the claimant's treating physician at Community Health Care since at least 2005, and had treated her physical and psychiatric conditions over 3 years' time (Exhibit 13F).  He was also the examining physician who performed multiple [state agency] physical evaluations (Exhibits 15F, 16F, 18F, 19F).  Dr. Panzer's opinions were treating-source medial opinions . . . and were accorded great weight.  By contrast, Dr. Covell's opinion was not entirely consistent with conclusions from psychological testing, his own recorded observations, and the medical records as a whole; as a result, his opinions were accorded little weight as discussed above.

7
8
9
10
11
12

The psychologist, David Brose, Ph.D., who diagnosed the claimant with bipolar disorder on March 18, 2005, rated her motor agitation and hyperactivity "marked" at the time, but her overall condition was already "relatively stabilized." (Exhibit 4F at 4)  Dr. Brose expected the claimant's psychiatric conditions to last 9 months minimum and 12 months maximum (Exhibit 4F at 4), from the time of the 2005 evaluation, more than 3 years before the alleged onset date in 2008.  Because Dr. Brose's assessment was not current, and the opinion of "marked" was contrary to the overall record, his opinions were accorded little weight.

13
14

AR 18-19.  Plaintiff argues the ALJ erred here in discounting the opinion of Dr. Covell.  The Court disagrees.

15
16
17
18
19
20
21
22
23
24
25
26

Specifically, plaintiff asserts the ALJ erred in placing greater weight on the opinions of Dr. Panzer, given that those opinions were provided some three years prior to the alleged onset date of disability.  The Court agrees that by themselves, the opinions Dr. Panzer provided back in 2005 and 2006, regarding plaintiff's ability to engage in pre-employment activities, provide little insight into her ability to do so in 2008 and beyond.  But as the ALJ went on to expressly note, Dr. Panzer had been plaintiff's treating physician since at least 2005, and had been treating her psychiatrically over a period of 3 years' time.  See AR 18.  Indeed, treatment notes provided by Dr. Panzer for the period beginning early September 2008, show plaintiff was doing much better than indicated by Dr. Covell in his opinion. See AR 450-51 (noting stable bipolar disorder even without medication and stable and improved anxiety); AR 454 (denying depression and recent manic symptoms); 470 (reporting having had no manic or hypomanic symptoms during last six

ORDER - 6

months); 548 (medication reported to be helping in controlling anxiety; depressed mood reported to be seldom and mild); 554 (reporting medication helpful in controlling anxiety and not feeling depressed); 557 (anxiety again noted to be controlled; acute worsening of depression and manic symptoms denied); 560-61 (recent manic and hypomanic symptoms and depressed mood denied, although panic disorder noted to be incompletely controlled).

It is true that Dr. Panzer is not a mental health expert, and that in general more deference is given to the "opinion of a specialist about medical issues related to his or her area of specialty" than to those medical opinion sources who are not specialists. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). On the other hand, the opinion of a treating physician generally is given more weight than the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. In addition, because Dr. Panzer treated plaintiff for her physical as well as her psychiatric conditions, his opinion regarding her mental health status may not be discounted solely on the basis that he is not a mental health expert. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (rejecting assumption that psychiatric evidence must be offered by board-certified psychiatrist, as under general principles of evidence law, primary care physician was qualified to give medical opinion on claimant's mental state as it related to her physical disability).

Accordingly, the ALJ was not required to assign more weight to Dr. Covell's opinion just because he is a psychologist, and Dr. Panzer is not. Plaintiff also argues the ALJ erred in placing more weight on the opinion of Dr. Peterson, a non-examining psychologist, than on that of Dr. Covell. But as noted above, a non-examining medical source opinion may constitute substantial evidence if it is consistent with other independent evidence in the record. In this case, the record supports the ALJ in finding the far less severe mental functional assessment Dr. Peterson gave to

ORDER - 7

be consistent with the medical evidence in the record as a whole, including the progress notes Dr. Panzer provided discussed above.  Dr. Peterson's assessment also is consistent with the overall findings of plaintiff's mental health treatment providers for the relevant period. <u>See</u> AR 329-51, 456-58, 462-63, 468, 483, 541, 551-52.

In addition, plaintiff argues the ALJ erred in relying on Dr. Peterson's opinion, because he noted Dr. Peterson "did not find any marked restriction in [plaintiff's] broad functional areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation." AR 18.  These four broad functional areas, plaintiff asserts, are only to be used at steps two and three of the sequential disability evaluation process.  Plaintiff might be correct if the ALJ had referenced the "B" criteria Dr. Peterson checked on the psychiatric review technique form she completed at the same time.[2] <u>See</u> 442.  But the ALJ was referring to the four functional areas – each of which contains several more specific mental functional categories – set forth in the mental functional residual capacity assessment form Dr. Peterson filled out, which are more in line with the type of assessment used at steps four and five. <u>See</u> AR 18, 446-47.  Accordingly, the ALJ did not err as alleged here.

Plaintiff challenges as well the ALJ's finding that Dr. Covell's opinion appeared to have been based heavily on her subjective complaints. A medical opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the

---

[2]  At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). <u>See</u> 20 C.F.R § 416.920(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. <u>Id.</u>  With respect to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A states as follows: "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations).  There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied.  We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."

ORDER - 8

claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601.  Dr. Covell,

plaintiff argues, relied on his observation of her overall presentation during the evaluation, and

not just on what she told him.  But as noted by the ALJ, Dr. Covell's clinical findings were not

consistent with the significant mental functional limitations he assessed. See Batson, 359 F.3d at

1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by

clinical findings).

Given the lack of objective support for those limitations, the ALJ did not err in finding

those assessed limitations were largely based on plaintiff's self-report.  In addition, as discussed

in greater detail below, the ALJ also did not err in discounting plaintiff's credibility.  The Court

thus also rejects plaintiff's contention that in so finding, the ALJ improperly acted as his own

medical expert. See McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799

(2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

As such, the ALJ did not err in rejecting the opinion of Dr. Covell.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

ORDER - 9

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part because her allegations of disabling symptoms and limitations were not supported by the objective medical evidence in the record. See AR 16-19.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues that in discounting her credibility on this basis, the ALJ failed to refer to any of her actual testimony, and therefore this does not constitute a valid reason for finding her not fully credible.  The ALJ, however, did specifically discuss plaintiff's testimony and allegations (see AR 16-17), and then discussed the objective medical evidence that contradicted them (see AR 17-19).  As such, the ALJ did not err here.  Nor did the ALJ err, for the reasons discussed above, on the basis that some of the medical evidence in the record the ALJ cited is dated prior to plaintiff's date last insured.

A claimant's pain testimony, however, may not be rejected "*solely* because the degree of

ORDER - 10

pain alleged is not supported by objective medical evidence." <u>Orteza v. Shalala</u>, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir.2001); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. <u>See</u> <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while <u>Bunnell</u> was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well).

Here, the ALJ did provide an additional reason for discounting plaintiff's credibility:

> Although the claimant alleged inability to sustain full-time work at 40 hours/week because of her "severe" psychiatric conditions (claimant testimony, Exhibits 10E at 4, 13F at 17), to a degree of having "emotional breakdowns" and having to leave work (Exhibit 4E at 2), the statements by her current manager indicated the opposite. In his Work Activity Questionnaire, the manager at the Laundromat, Robert Carrell, stated that the claimant was "usually on time," missing only "a shift or two" because of illness (Exhibit 8E at 1); and the claimant had held this job for almost 5 years, since April 2004, according to her Work History Report (Exhibit 5E at 1). With respect to work relationships with supervisors and co-workers, Mr. Carrell described that the claimant had a "good personality" and "no issues to speak of." (Exhibit 8E at 1) Her manager's statements were consistent with the RFC finding [discussed below].

AR 19. As noted above, the ALJ may consider a claimant's work record and the observations of third parties in assessing his or her credibility. <u>Smolen</u>, 80 F.3d at 1284. Plaintiff argues this job was only part-time and not performed for all that long. But as noted by the ALJ, she had held it for almost five years beginning in April 2004. That certainly is long enough for her manager to know how well she could perform that job, and for the ALJ to base his credibility determination in part on the manager's statements. Further, even though the job may have been performed only part-time, it still gives a sufficient indication of plaintiff's actual work-related capabilities. That is, although it may not have been performed at the substantial gainful activity level, it does show

1    plaintiff is not as disabled as she has alleged.

2    III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

3            Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

4    take into account," unless the ALJ "expressly determines to disregard such testimony and gives

5    reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

6    2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

7    germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

8    link his determination to those reasons," and substantial evidence supports the ALJ's decision.

9
10   Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

11   694 F.2d at 642.

12           The ALJ addressed the lay witness evidence in this case as follows:

13
             Third party statements have been considered.  The claimant's friend, Caitlyn
14           Metcalf, stated that she had witnessed the claimant's depressive and manic
             episodes from bipolar disorder (Exhibit 19E).  The claimant's father, Joseph
15           Day, described the claimant's past work history of bipolar disorder, and that
             she could not "work a full time job and fully support herself due to her
16           extreme ups and downs." (Exhibit 20E)  Ms. Metcalf's and Mr. Day's
             statements did not add new information to the claimant's impairments beyond
17           that in the medical records, and more reliance had been placed on the
             professional analyses discussed above.  Accordingly, the third-party
18           statements were accorded little weight.

19
20   AR 19.  Plaintiff argues, and the Court agrees, that the ALJ failed to provide germane reasons for

21   discounting the above lay witness evidence.  It is not clear what the ALJ meant in stating that the

22   lay witness statements did not add any new information beyond what is reflected in the medical

23   evidence in the record.  The purpose of such statements is not to shed more light on the medical

24   basis for a claimant's alleged impairments, but rather to provide further information concerning

25   the claimant's functioning, and thus ability to work. See 20 C.F.R. § 416.913(d).

26

     ORDER - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In any event, the above lay witness statements do provide such further information.  For example, Ms. Mecalf stated she had seen plaintiff "go through days where she is so depressed that all she does is lay in bed all day long," which, if true, would clearly impact plaintiff's ability to work. AR 259.  Mr. Day also stated that "[s]ome days she can't even seem to get out of bed or socialize." AR 260.  In addition, the ALJ did not discuss at all three other lay witness statements in the record from plaintiff's step-mother, plaintiff's sister and another friend, which also bear on plaintiff's ability to function. See AR 263 (plaintiff "will go for days without showering, eating, or interacting with other people"), 266 ("Once a [manic] episode hits she might stay in bed for days or she might stay awake for days."), 269 ("Driving is impossible for her, because without any medication to curb the attacks she panics while on the road.").

While it is true as defendant notes, that much of what these three lay witnesses – as well as Ms. Metcalf and Mr. Day – discuss concerning plaintiff's functioning and ability to work are somewhat conclusory and not necessarily limited to the alleged period of disability at issue here, the specific comments cited above do potentially concern her current functioning.  Thus, the Court disagrees that the ALJ's error in this instance was harmless, in that the Court cannot say that no reasonable ALJ could have reached a different disability determination – even though, as discussed elsewhere herein, the ALJ did not err in either evaluating the medical evidence in the record or in discounting plaintiff's credibility – given that all five lay witness statements support plaintiff's allegations of disabling mental functional limitations. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ errs in failing to properly discuss competent lay witness testimony favorable to claimant, for that error to be harmless, court must conclude no reasonable ALJ, when fully crediting that testimony, could have reached different disability determination).

ORDER - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the mental residual functional capacity to:

> **. . . make judgments on simple work-related decisions; respond**
> **appropriately to supervision, co-workers and work situations; and deal**
> **with changes, all within a routine work setting.  However, she cannot deal**
> **with the general public, as in a sales position; but incidental contact with**
> **the general public is not precluded, as at the level currently being**
> **experienced at her job as a laundry room attendant.**

AR 16 (emphasis in original).  Plaintiff argues this assessment is not supported by substantial evidence, in light of the ALJ's errors in evaluating the objective medical evidence in the record and in discounting her credibility.  But as discussed above the ALJ did not err in this regard, and thus he also did not err in assessing plaintiff's RFC on this basis.  On the other hand, because as

ORDER - 14

also discussed above, the ALJ erred in evaluating the lay witness evidence in the record and it cannot be said with any certainty that no reasonable ALJ would find plaintiff disabled if that lay witness evidence was credited, it also is far from certain that the ALJ's assessment of plaintiff's residual functional capacity is entirely accurate.

V.     The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff could perform her past relevant work, as it did not require the performance of work-related activities precluded by the RFC with which he assessed her. See AR 19.  Plaintiff argues, and once more the Court agrees, that the ALJ erred in so finding here.  While plaintiff has the burden at step four to show that she is unable to return to her past relevant work, for the same reason the ALJ erred in assessing her residual functional capacity, that burden has been met in this case. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  That is, the ALJ's error in evaluating the lay witness evidence in the record, and thus his resultant error in assessing plaintiff's RFC, prevents this Court from concluding the ALJ's determination at step four is proper.

VI.    The ALJ's Alternative Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

1    Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

2    therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

3    Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

4    claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

5    (citations omitted).  The ALJ, however, may omit from that description those limitations he or

6    she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

7

8            At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

9    substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

10   functional capacity. See AR 53-54.  In response to that question, the vocational expert testified

11   that an individual with those limitations – and with the same age, education and work experience

12   as plainitff – would be able to perform other jobs. See AR 53-56.  Based on the testimony of the

13   vocational expert, the ALJ found in the alternative that plaintiff would be capable of performing

14   other jobs existing in significant numbers in the national economy. See AR 20-21.

15

16           Again, in light of the ALJ errors in evaluating the lay witness evidence in the record and

17   thus in assessing plaintiff's residual functional, the Court agrees that it cannot be said for certain

18   that the hypothetical question the ALJ posed to the vocational expert properly accounts for all of

19   her mental functional limitations.  Accordingly, the Court finds the ALJ also erred in finding her

20   to be not disabled at step five.  On the other hand, the Court rejects plaintiff's argument that the

21   ALJ was required to find her disabled at this step on the basis of the functional limitations found

22   by Dr. Peterson.

23

24           As plaintiff notes, Dr. Peterson found plaintiff to be moderately limited in her ability to

25   maintain attention and concentration, complete a normal workday and workweek, perform at a

26   consistent pace, and interact appropriately with the general public. See AR 446-47.  As plaintiff

ORDER - 16

also notes, the vocational expert testified at the hearing that it would be reasonable to define the

term "moderate" to mean "impact[ing] an individual 20 percent of the time." AR 59-60.  Thus,

plaintiff argues, if an individual is moderately limited as described above, meaning he or she is

impacted for "up to 20% of the work schedule," that individual would be unable to be employed,

as he or she "would lose 4 to 8 hours a week." ECF #14, p. 12.  But being *impacted* 20% of the

time in the above functional areas, does not necessarily mean the individual would actually be

*absent* from work for that time.  Indeed, nothing in the record – including the vocational expert's

testimony – indicates that this would be the case.  As such, the ALJ was not required to interpret

Dr. Peterson's limitations as plaintiff does here.[3]

VII.    This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

---

[3] Nor was the ALJ required to adopt the additional testimony of the vocational expert that and individual who was functionally limited as found by Dr. Covell would be unable to sustain work activity (see AR 58-60), given that the ALJ did not err in rejecting Dr. Covell's opinion.

ORDER - 17

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the lay witness evidence in the record, and thus in regard to plaintiff's residual functional capacity and her ability to perform her past relevant work and other jobs existing in significant numbers in the national economy, remanding this matter for the purpose of conducting further administrative proceedings is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court hereby reverses defendant's decision and remands this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

DATED this 4th day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 18